IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-264-BO

| | |
|---|---|
| DIANNA ARGERIS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| | ) |
| CAROLYN COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court on pending motions. [DE 24, 30, 31]. A hearing was held in Elizabeth City, North Carolina, on July 8, 2016. For the reasons detailed below, the judgment of the Commissioner is REVERSED.

## BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on September 17, 2012. [Tr. 62]. Plaintiff alleges an onset date of August 24, 2012. *Id.* Her claim was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge (ALJ) on August 27, 2014, in Fayetteville, North Carolina. *Id.* The ALJ issued an unfavorable decision for plaintiff on September 30, 2014. [Tr. 59–73]. The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner, on April 27, 2015. [Tr. 1]. Plaintiff then sought review in this Court. [DE 1].

On her alleged onset date, plaintiff was 54 years old. Plaintiff has an eleventh grade education and past relevant work as a cashier. [Tr. 72]. Plaintiff has a history of chronic obstructive pulmonary disease (COPD)/asthma/bronchitis/allergies and obesity. [Tr. 64].

In response to plaintiff's motion for judgment on the pleadings, defendant moved to remand for further administrative proceedings and development under sentence four of 42 U.S.C. § 405(g). In response, plaintiff moved for dismissal, explaining at hearing that remand for further administrative proceedings could jeopardize a subsequent award of benefits. At the hearing, both sides offered substantive arguments on the issue of disability, which the Court now decides.

DISCUSSION

When a social security claimant appeals a final decision of the Commissioner, the Court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

To find a claimant disabled, an ALJ must conclude that the claimant satisfies each of five steps. 20 C.F.R. § 404.1520(a)(4). First, a claimant must not be able to work in a substantial gainful activity. *Id.* Second, a claimant must have a severe physical or mental impairment or combination of impairments. *Id.* Third, a claimant's impairment(s) must be of sufficient duration and must either meet or equal an impairment listed by the regulations. *Id.* Fourth, a claimant must not have the residual functional capacity to meet the demands of claimant's past relevant work. *Id.* Finally, the claimant must not be able to do any other work, given the claimant's residual functional capacity, age, education, and work experience. *Id.* The claimant bears the

2

burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ found that plaintiff had not engaged in substantial gainful employment since August 24, 2012. [Tr. 64]. Next, the ALJ determined that plaintiff's history of chronic obstructive pulmonary disease (COPD)/asthma/bronchitis/allergies and obesity were severe impairments. *Id.* However, none of plaintiff's impairments or combination of impairments met or equaled a listing. [Tr. 65]. At step four, the ALJ found that plaintiff was capable of performing light work with only occasionally climbing ladders/ropes/scaffolds and avoiding exposure to pulmonary irritants, temperature extremes, and concentrated exposure to workplace hazards. [Tr. 66]. Having so concluded, the ALJ found that plaintiff was capable of performing her past relevant work as a cashier. [Tr. 72]. Accordingly, the ALJ found that plaintiff was not disabled at any time between her alleged onset date and the date of decision. [Tr. 72]. Plaintiff now seeks review of the ALJ's determination.

In its motion for remand, defendant argued remand was appropriate because the ALJ assumed a Physical Residual Functional Capacity Questionnaire was only endorsed by a physician's assistant (PA), rather than the treating physician as well. [DE 30]. Moreover, defendant also noted that there was a second Physical Residual Functional Capacity Questionnaire completed later and signed specifically by the treating physician which was not considered and needed to be reevaluated. *Id.* The Court is similarly concerned with these two issues and now considers them in turn, to be followed by a discussion of whether the ALJ's decision was supported by substantial evidence.

3

I.  PA-C Opinion

Plaintiff was treated by Hope Mills Family Care beginning in September 2012 and has been a patient as recently—from the records before the Court—as 2015. During the course of this time, plaintiff was seen by Dr. Johnnie Moultrie and Julia Gumpert, PA-C.

The Court recognizes that, pursuant to the regulations, a PA is not an acceptable medical source. *See* 20 C.F.R. § 404.1527; 20 C.F.R. § 404.1513. However, this Court has previously held that "where a physician's assistant has treated a patient under the supervision of physicians and renders an opinion based on the course and scope of such supervised treatment, the physician's assistant's opinion deserves the same weight as that of a treating physician." *Bond v. Astrue*, 2010 U.S. Dist. LEXIS 145985, *5 (E.D.N.C. Apr. 21, 2010). In other words, "if the facts of treatment show the primary caregiver is a non-acceptable medical source, such as a nurse practitioner, and a doctor adopts the findings and information about the patient and is engaged in the treatment, the nurse practitioner's evaluation <u>becomes</u> the report of the doctor." *Palmer v. Colvin*, 2014 U.S. Dist. LEXIS 35115, *5 (E.D.N.C. Mar. 17, 2014) (emphasis in original).

Here, precisely these circumstances occurred. Plaintiff was seen at Hope Mills Family Care for years—at times being seen by each Dr. Moultrie and Ms. Gumpert. On April 11, 2013, a Physical Residual Functional Capacity Questionnaire was completed. The report appears to have been filled out by Ms. Gumpert but, as conceded by the ALJ, "also apparently signed by Dr. Johnnie Moultrie." [Tr. 71, 412–17]. Nevertheless, the ALJ gave this report little weight for several reasons, the substantive of which will be discussed *infra*. In the ALJ's discussion of the weight given the report, he included statements which trouble the Court concerning the nature of treatment provided by a medical professional such as a PA.

4

In his decision, the ALJ noted that Ms. Gumpert worked under Dr. Moultrie but *nevertheless* stated that Ms. Gumpert was "the clear author of the report"—and Dr. Moultrie was not—"so the opinions are clearly those of Ms. Gumpert." [Tr. 71]. However, as the Court has already stated, "where a physician's assistant has treated a patient under the supervision of physicians and renders an opinion based on the course and scope of such supervised treatment, the physician's assistant's opinion deserves the same weight as that of a treating physician." *Bond v. Astrue*, 2010 U.S. Dist. LEXIS 145985 at *5; [Tr. 71]. Therefore, when Ms. Gumpert completed the questionnaire at issue (which was also signed by Dr. Moultrie), the medical opinions contained within were those of both Ms. Gumpert *and* Dr. Moultrie. *See Palmer v. Colvin*, 2014 U.S. Dist. LEXIS 35115 at *5; [Tr. 417]. Accordingly, the ALJ erred in discounting the weight given the opinions contained in the questionnaire for being just those of Ms. Gumpert.

II. Subsequent Questionnaire/Substantial Evidence

a. Subsequent Questionnaire

Following the ALJ's decision, plaintiff submitted a second Physical Residual Functional Capacity Questionnaire (this one signed only by Dr. Moultrie) to the Appeals Council, which considered it before denying plaintiff's request for review. [Tr. 2]. In its motion, defendant concedes that this questionnaire, which was never seen by the ALJ, "needs to be reevaluated." [DE 30]. Accordingly, the Court evaluates it now and finds that it is evidence of disability.

In the second questionnaire, conducted on January 21, 2015, Dr. Moultrie found clinical findings and objective signs of "wheeze, decreased oxygen saturation, shortness of breath, accessory muscle use." [Tr. 7]. Dr. Moultrie also found that plaintiff's symptoms would "frequently" interfere with attention or concentration during the workday. [Tr. 9]. Dr. Moultrie

5

opined that plaintiff would need to take unscheduled breaks during an eight-hour work day, including possibly to use a nebulizer. *Id.* Dr. Moultrie estimated these breaks would be 15–20 minutes. [Tr. 11]. Dr. Moultrie also concluded plaintiff would likely miss about four days of work per month due to her condition. [Tr. 12]. Dr. Moultrie's questionnaire concluded with his opinion that plaintiff was incapable of full-time work at any level of exertion. [Tr. 13]. While the Court recognizes that the issues of what an individual's RFC is, whether it prevents performing past relevant work, and whether an individual is disabled are properly reserved to the Commissioner, these opinions are nevertheless instructive given the corroborating evidence discussed *supra*. SSR 96-5p.

    b. Substantial Evidence

The opinion of a treating physician must be given controlling weight if it is not inconsistent with substantial evidence in the record and may be disregarded only if there is persuasive contradictory evidence. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *Mitchell v. Schweiker*, 699 F.2d 185 (4th Cir. 1983). Here, Dr. Moultrie's (and Ms. Gumpert's, working under Dr. Moultrie) opinions are supported by the record. Accordingly, and for all the reasons discussed *infra*, these opinions are entitled to controlling weight.

Plaintiff was hospitalized for three days in 2012 for breathing difficulties, receiving steroids, breathing treatment, and supplemental oxygen. [Tr. 283]. She was discharged with an inhaler, prednisone, and two nebulizers. *Id.*

Following the hospitalization, plaintiff reported to Hope Mills Family Care, where she continued to receive treatment every three months for years. [Tr. 314, 412, 7]. A pulmonary function test done a few months later was determined to show a moderate obstructive defect consistent with chronic bronchitis [Tr. 384].

6

Plaintiff was hospitalized again for breathing difficulties later in 2012. [Tr. 326].

Plaintiff was taken to the emergency department again in early 2013. [Tr. 387].

Later in 2013, Ms. Gumpert, supervised by Dr. Moultrie, completed the Physical Residual Functional Capacity Questionnaire discussed *supra*, which concluded, among other things, that there were clinical findings and objective signs of "wheeze, decreased oxygen saturation, [and] shortness of breath," that plaintiff could walk less than one block due to shortness of breath, and that plaintiff may need 15–20 minute breaks during the work day to use a nebulizer. [Tr. 412–17].

In 2014, plaintiff was found to have oxygen saturation decreased on room air to 90% at rest and 88% with exertion. [Tr. 515]. Face to face interaction with the treatment provider confirmed the need for oxygen. *Id.*

In late 2014, plaintiff was again hospitalized for acute COPD exacerbation and acute chronic respiratory failure. [Tr. 15]. Continued oxygen via nasal cannula, respiratory therapy protocol, nebulizers, intravenous steroids, and antibiotics were administered. [Tr. 19].

Finally, in 2015, based on around three years of regular treatment at his practice, Dr. Moultrie completed the second Physical Residual Functional Capacity Questionnaire, which was discussed *supra*.

At the hearing, plaintiff testified that she was on oxygen twenty-four hours a day, could not do household chores, and could only stand for approximately twenty minutes. [Tr. 67].

Nevertheless, the ALJ discounted the opinions of Ms. Gumpert and Dr. Moultrie as not supported by their own treatment records and inconsistent with the claimant's respiratory impairments. Despite all the evidence discussed above, the ALJ did not elaborate on his reasoning. The ALJ also concluded plaintiff did not need supplemental oxygen, despite Dr.

Moultrie's conclusion that his face-to-face encounter with plaintiff confirmed the need for oxygen. [Tr. 72].

Giving the treating physician opinions the weigh they are due, and considering the objective medical evidence, medications, supplemental oxygen, objective test results, and plaintiff's testimony, the Court finds that there is substantial evidence in this case that plaintiff is capable of only sedentary work. Accordingly, pursuant to Grid Rule 201.10, plaintiff is disabled. 20 C.F.R. Pt. 404, Subpart P., App. 2 § 202.10.

<u>Reversal for Award of Benefits</u>

The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one that "lies within the sound discretion of the district court." *Edwards v. Bowen*, 672 F. Supp. 230, 237 (E.D.N.C. 1987); *see also Evans v. Heckler*, 734 F.2d 1012, 1015 (4th Cir. 1984). When "[o]n the state of the record, [plaintiff's] entitlement to benefits is wholly established," reversal for award of benefits rather than remand is appropriate. *Crider v. Harris*, 624 F.2d 15, 17 (4th Cir. 1980). The Fourth Circuit has held that it is appropriate for a federal court to "reverse without remanding where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974). Remand, rather than reversal, is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013).

The Court in its discretion finds that reversal is appropriate in this instance as the ALJ improperly weighed the opinion of the treating physician, which, considered with all the other

8

evidence in the case, establishes by substantial evidence that plaintiff is capable of no more than sedentary work.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is GRANTED. [DE 24]. Defendant's motion to remand for further proceedings is DENIED. [DE 30]. Plaintiff's motion to dismiss is DENIED AS MOOT. [DE 31].

The decision of the Commissioner is REVERSED, and the matter is REMANDED to the Commissioner for an award of benefits.

SO ORDERED, this __18__ day of July, 2016.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE